**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL KRACKENBERGER**, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| vs. | |
| **NORTHWESTERN MEMORIAL HOSPITAL, META PLATFORMS, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, and INSTAGRAM, LLC,** | **CLASS ACTION COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Krackenberger ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), through counsel, for his complaint against defendants, Northwestern Memorial Hospital, Meta Platforms, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, and Instagram, LLC, states:

### NATURE OF THE CASE

1.     This is a class action arising out of the defendants' use of Meta Pixel to unlawfully collect the private medical information of Northwestern Memorial Hospital's patients and to use that data for their own profit.

### THE PARTIES

2.     Plaintiff, Michael Krackenberger ("Plaintiff"), is a natural person who resides in Skokie, Illinois.

3.      Defendant, Northwestern Memorial Hospital is an Illinois Not-For-Profit Corporation. Northwestern Memorial Hospital's registered agent is Danae K. Prousis, 211 E. Ontario Street Suite 180, Chicago, IL. 60611.

4.      Defendant Meta Platforms, Inc., is a Delaware corporation and multinational technology conglomerate, having its principal place of business in Menlo Park, California.

5.      Meta develops and maintains social media platforms, communication platforms, and electronic devices. These platforms and products include Facebook (its self-titled app, Messenger, Messenger Kids, Marketplace, Workplace, etc.), Instagram (and its self-titled app), and a line of electronic virtual reality devices called Oculus Quest (soon to be renamed "Meta Quest"). Meta's subsidiaries include, but may not be limited to: Facebook Holdings, LLC (Delaware); Facebook Operations, LLC (Delaware); Facebook Payments Inc. (Delaware); Facebook Technologies, LLC (Delaware); FCL Tech Limited (Ireland); Instagram, LLC (Delaware); Novi Financial, Inc. (Delaware); Runways Information Services Limited (Ireland); Scout Development LLC (Delaware); Siculus, Inc. (Delaware); and a dozen other entities whose identity or relevance is presently unclear.

6.      Defendant Facebook Holdings, LLC ("Facebook 1") was incorporated in Delaware on March 11, 2020, and is a wholly owned subsidiary of Meta Platforms, Inc. Facebook 1 is primarily a holding company for entities involved in Meta's supporting and international endeavors, and its principal place of business is in Menlo Park, California. Defendant Meta is the sole member of this LLC Defendant.

7.      Defendant Facebook Operations, LLC ("Facebook 2") was incorporated in Delaware on January 8, 2012, and is a wholly owned subsidiary of Meta Platforms, Inc. Facebook

2

2 is likely a managing entity for Meta's other subsidiaries, and its principal place of business is in Menlo Park, California. Defendant Meta is the sole member of this LLC Defendant.

8.      Defendant Instagram, LLC ("Instagram") was founded by Kevin Systrom and Mike Krieger in October 2010. In April 2021, Meta purchased the company for $1 billion (later statements from Meta have indicated the purchase price was closer to $2 billion). Meta reincorporated the company on April 7, 2012, in Delaware. Currently, the company's principal place of business is in in Menlo Park, CA. Instagram is a social media platform tailored for photo and video sharing. Defendant Meta is the sole member of this LLC Defendant.

### JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), "CAFA". The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, there are believed to be thousands of members of the class, and there is minimal diversity between the members of the class and the Defendants.

10.     This Court has personal jurisdiction over the various Defendants as shown in the following paragraphs.

11.     Defendant Northwestern Memorial Hospital is an Illinois Not-For-Profit Corporation whose principal place of business is in this judicial district, and all or a substantial portion of the wrongs in this case occurred in this judicial district.

12.     This Court has specific personal jurisdiction over Defendants Meta, Facebook 1, Facebook 2, and Instagram (collectively the "Facebook Defendants") because the Facebook Defendants transact business in the State of Illinois and purposely avail themselves of the benefits of transacting business with Illinois residents and do so in this judicial district. Further, all or a substantial portion of the wrongs in this case occurred or originated in this judicial district.

3

Plaintiff's claims set forth herein arise out of and/or relate to the Facebook Defendants' activities in the State of Illinois and purposeful availment of the benefits of transacting business here and the exercise of personal jurisdiction by this Court comports with traditional notions of fair play and substantial justice.

13.     The Facebook Defendants interface with a significant percentage of the population of the State of Illinois relating to use of the products at issue in this case, and interact extensively with—send messages, notifications, and communications to—and provide a myriad of other interactive services and recommendations to users the Facebook Defendants expect and know to be in the State of Illinois.

14.     The Facebook Defendants advertise extensively in Illinois, through contractual relationships with third-party "partners" who advertise on their behalf via electronic and internet-based platforms and devices. In fact, the wrongdoing complained of in this case, arises from the Facebook Defendants' desires to gather more information from residents utilizing the data captured through Northwestern Memorial Hospital's patient portal for purposes of advertising and marketing to those users and selling those users personal information to increase the Facebook Defendants' revenues from advertising and marketing.

15.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) and 1400(a) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and jurisdiction over all defendants to this action is proper in this District.

16.     The Amount in controversy exceeds $5,000,000 due to the size of the Class and the demand for an award of punitive damages in this case.

## SUMMARY OF CLAIMS

17.    The Plaintiff and the class members have sought medical care through Northwestern Memorial Hospital.

18.    The Defendant Northwestern Memorial Hospital required its patients to schedule its appointments and create a patient account through a medical portal.

19.    Unbeknownst to the Plaintiff and members of the Class, the Northwestern Memorial Hospital client portal allowed or authorized the presence of computer code called Meta Pixel that is commonly referred to as a tracker. Meta Pixel is owned or created by one or more of the Facebook Defendants and gathers information used by or for the benefit of the Facebook Defendants.

20.    Unbeknownst to the Plaintiff and the members of the Class, Meta Pixel surreptitiously captures and distributes their highly sensitive medical information for the use and benefit of the Facebook Defendants.

21.    The Facebook Defendants utilize the captured highly sensitive medical information for their own profit. This includes republishing the information to third parties for profit and using the data for their own revenue generating purposes including targeting advertising to the Plaintiff and the Class members.

22.    Plaintiff and the members of the class were required to utilize Northwestern Memorial Hospital's patient portal to interact with medical providers, schedule appointments, review medical records, request prescription refills, and for other medically sensitive purposes.

23.    Plaintiff and the members of the class were unable to avoid these harms due to the Defendant Northwestern Memorial Hospital allowing Meta Pixel to have access to its patient portal.

24.     Defendant Northwestern Memorial Hospital violated the Plaintiff's and the class members' rights to privacy and facilitated the capture and publication of their private information.

25.     The Facebook Defendants violated the Plaintiff's and the class members' rights to privacy by surreptitiously acquiring their private medical information in violation of one or more laws.

## FACTS RELATED TO PLAINTIFF

26.     Plaintiff was a patient of Northwestern Memorial Hospital.

27.     Northwestern Memorial Hospital required Plaintiff to create a patient account through an online, browser accessed, patient portal.

28.     Northwestern Memorial Hospital made representations that the plaintiff portal was secure and confidential.

29.     Plaintiff used the portal as required by Northwestern Memorial Hospital to schedule appointments, review records, and interact with medical providers, and view sensitive medical information related to his care and treatment.

30.     Unknown to Plaintiff, Northwestern Memorial Hospital had allowed Meta Pixel to have access to the patient portal.

31.     Meta Pixel utilized this access to surreptitiously gather the Plaintiff's sensitive medical information.

32.     The Facebook Defendants have used and published the Plaintiff's medical information for their own profit.

33.     Plaintiff discovered that Northwestern Memorial Hospital allowed Meta Pixel to access its patient portal through a news story titled "*Facebook Is Receiving Sensitive Medical Information from Hospital Websites*" published on June 16, 2022.[1]

34.     As noted in the article, Northwestern Memorial Hospital issued a statement that the use of Meta Pixel is disclosed in its terms and conditions.

35.     However, Northwestern Memorial Hospital is a Data Collector as defined under Illinois's Personal Information Protection Act ("PIPA"). See 815 ILCS 530/5.

36.     PIPA protects Medical Information. *Id.*

37.     PIPA Section 530/45(a) states Data Collectors "shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45.

38.     PIPA's rights are not subject to waiver.

39.     Northwestern Memorial Hospital also failed to comply with 815 ILCS 530/45.

40.     The Plaintiff and the Class also have rights to privacy and confidentiality under Illinois's Patient Rights Act. 410 ILCS 50/3(d). The rights granted under the Patient Rights Act are not subject to waiver.

41.     Northwestern Memorial Hospital's conduct violated the Plaintiff's and the Class's rights to privacy and confidentiality set out in the Patient Rights Act.

42.     The Facebook Defendants' conduct in surreptitiously capturing the Plaintiff's and the Class's confidential medical information violates PIPA and the Federal Wiretap Act at 18 U.S.C. § 2511(1)(a), (c), and (d), and / or the Stored Communications Act at 18 U.S.C. § 2701(a).

---

[1] https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites last viewed on 8/5/2022.

43.     As a result of its violations of law, the Facebook Defendants captured the Plaintiff's and the Class members' private medical information and then published that information or otherwise used it for profit.

44.     The Defendants collective actions are an invasion of the privacy of the Plaintiff and the Class.

## CLASS ALLEGATIONS

## PROPOSED CLASS DEFINITION

45.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by the Defendants' violations of law subject to modification after discovery and case development:

> All patients of Northwestern Memorial Hospital who utilized
> Northwestern Memorial Hospital's patient portal at any time in the two
> years preceding the filing of this action.

46.     Class members are identifiable through the Defendants' records.

47.     Excluded from the Class are: (1) any Judge presiding over this action and members of their families; (2) Any Defendant, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their subsidiaries, parents, successors, predecessors have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

48.     The Defendants' actions have harmed Plaintiff and the Class.

**CLASS ACTION FACTORS**

49.     **Numerosity**: The exact number of Class members is currently unknown to Plaintiff but is anticipated to be in the thousands if not tens of thousands. Therefore, individual joinder is impracticable. Ultimately, the Class members will be easily identified through Defendants' records.

50.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

     (a)     Whether the Defendants obtained medical information from the Plaintiff and the Class.

     (b)     Whether the Defendants published Plaintiff's and the Class's medical information to third parties.

     (c)     Whether the Defendants' conduct invaded the Plaintiff's and the Class's privacy.

     (d)     Whether the Defendants' conduct violated applicable laws.

     (e)     Whether the Defendants should be ordered to disgorge any revenue received from dealing in the Plaintiff's and the Class's medical information illegally.

     (f)     Whether the Defendants should be enjoined from continuing to violate applicable laws with respect to the Plaintiff's and the Class members' medical information.

51.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial

resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class. Plaintiff's claims are typical of the claims of the Class.

52.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

## CAUSES OF ACTION

### COUNT ONE

**Invasion of Privacy**
**Intrusion Upon Seclusion**
**The Facebook Defendants**

53.     As set out in the prior Paragraphs, the Facebook Defendants have surreptitiously obtained Plaintiff's and the Class Members' private medical information.

54.     The Facebook Defendants' conduct is an unauthorized intrusion or prying into the Plaintiff's and Class Member's seclusion.

55.     The Facebook Defendants' intrusion is highly offensive and objectionable to the Plaintiff and the Class.

56.     The Plaintiff's and Class Members' medical information is private and was intended by the Plaintiff and the Class to remain private and confidential.

57.     The Facebook Defendants' conduct has caused the Plaintiff and the Class anguish and suffering arising from their loss of privacy and confidentiality of their medical information.

58.     The Plaintiff and the Class claim all damages allowable at law for the needless harms inflicted upon them by the Facebook Defendants.

## COUNT TWO

**Invasion of Privacy**
**Public Disclosure of Private Facts**
**Northwestern Memorial Hospital**

59.     As set out in the prior paragraphs, Northwestern Memorial Hospital allowed the public disclosure of the Plaintiff's and the Class Members' medical information to the Facebook Defendants by allowing the Meta Pixel tool to be used on the patient portal.

60.     Northwestern Memorial Hospital's actions gave publicity to the private medical information of the Plaintiff and the Class.

61.     The loss of privacy and confidentiality of the Plaintiff's and the Class Member's private medical information is highly offensive to any reasonable person.

62.     There is no legitimate public concern with respect to the private medical information of the Plaintiff and the Class.

63.     As a result of this public disclosure, the Plaintiff and the Class Members have been needlessly harmed by having their private and confidential medical information disseminated for

profit by the Facebook Defendants which was allowed by Northwestern Memorial Hospital's conduct.

64.     The Plaintiff and the Class Members claim all damages allowed at law for the needless harms inflicted upon them by Northwestern Memorial Hospital.

## COUNT THREE

**Invasion of Privacy**
**Public Disclosure of Private Facts**
**The Facebook Defendants**

65.     As set out in the prior paragraphs, the Facebook Defendants obtained the Plaintiff's and Class Members' private medical information using Meta Pixel on the patient portal for Northwestern Memorial Hospital.

66.      The Facebook Defendants then sold this information for profit and otherwise used this information in pursuit of profit.

67.     The Facebook Defendants' actions publicized the private medical information of the Plaintiff and the Class.

68.     The loss of privacy and confidentiality of the Plaintiff's and the Class Member's medical information is highly offensive to any reasonable person.

69.     There is no legitimate public concern with respect to the private medical information of the Plaintiff and the Class Members.

70.     As a result of this public disclosure for profit by the Facebook Defendants, the Plaintiff and the Class Members have been needlessly harmed by having their private and confidential medical information disseminated for profit to business partners and customers of the Facebook Defendants.

71.    The Plaintiff and the Class Members claim all damages allowed at law for the needless harms inflicted upon them by the Facebook Defendants.

## COUNT FOUR

**Violation of the Federal Wiretap Act ("FWA")**
**The Facebook Defendants**

72.    As set out in the prior paragraphs, the Facebook Defendants obtained the Plaintiff's and Class Members' medical information using Meta Pixel on the patient portal for Northwestern Memorial Hospital.

73.    The FWA makes it unlawful to intentionally intercept or endeavor to intercept ... any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). The Act also prohibits the intentional "disclos[ure]" or "use[ ]" of the contents of an unlawfully intercepted electronic communication. *Id*. § 2511(1)(c), (d).

74.    The Facebook Defendants used Meta Pixel to intentionally intercept, or endeavor to intercept, the electronic communications of the Plaintiff and the Class made on the Northwestern Memorial Hospital patient portal and capture their private medical information.

75.    The Facebook Defendants disclosed the contents of the unlawfully intercepted electronic communications for its own profit.

76.    The Facebook Defendants had no right to intercept, collect, and disclose the Plaintiff's and the Class members' private medical information.

77.    The Facebook Defendants' conduct has needlessly harmed the Plaintiff and the Class by disclosing intimately personal facts and data in the form of their private medical information. This disclosure and loss of privacy and confidentiality has caused the Plaintiff and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

78.     The Plaintiff and the Class claim all damages available at law for the Facebook Defendants' violations of the FWA.

79.     In addition to the normal general damages flowing from these needless harms, the Plaintiff and the Class seek disgorgement of all revenue earned by the Facebook Defendants through the use of this medical information and an injunction against the Facebook Defendants requiring them to destroy the medical information in such a manner that the data is completely removed from their records and to disclose to the Plaintiff and the Class all the persons, businesses, and entities who may have received any of the Plaintiff's or the Class Members' medical information.

## COUNT FIVE

### Violation of the Stored Communications Act ("SCA")
### The Facebook Defendants

80.     As stated in the foregoing paragraphs, the Facebook Defendants gained access to the Plaintiff's and Class Member's medical information using Meta Pixel within Northwestern Memorial Hospital's patient portal.

81.     Upon information and belief, Northwestern Memorial Hospital allowed the Facebook Defendants to access their patient portal with Meta Pixel.

82.     The Northwestern Memorial Hospital patient portal is a "facility" as defined by the SCA as the portal stores both the medical information of its users and the communications between the hospital and its patients.

83.     The Facebook Defendants intentionally exceeded their authorization to access the Northwestern Memorial Hospital patient portal to obtain access to electronic communications while in storage in violation of 18 U.S.C. § 2701(a)(2).

84.    The SCA authorizes a private right of action for a violation of 18 U.S.C. § 2701(a)(2).

85.    The Facebook Defendants' violations of the SCA allowed the Facebook Defendants to capture the Plaintiff's and the Class members' private medical information.

86.    The Facebook Defendants then purposefully disseminated the Plaintiff's and Class members' medical information for profit.

87.    The Plaintiff and the Class claim all damages available at law for the Facebook Defendants' violations of the SCA.

## DAMAGES AND EQUITABLE RELIEF

88.    The conduct of the Defendants needlessly harmed the Plaintiff and the Class.

89.    The Plaintiff and the Class have experienced and will continue to experience mental anguish, emotional distress, worry, fear, and other related harms arising directly from the Defendants' actions.

90.    The Defendants' conduct allowed for the capture and disclosure of the Plaintiff and the Class members' private medical information including intimately personal facts and data regarding medical treatments and history.

91.    The Plaintiff and the Class have lost the privacy and confidentiality of all the medical information in the Defendants' hands.

92.    The Plaintiff and the Class request the Court enter an injunction against the Facebook Defendants directing them to destroy the Plaintiff's and Class Members' medical information.

93.     The Plaintiff and the Class request the Court order the Facebook Defendants to disclose anyone who has been given access to the Plaintiff's and Class Members' medical information.

94.     The Plaintiff and the Class request an order disgorging all profits made by any of the Defendants by the publication of the Plaintiff's and Class members' private medical information.

95.     The Plaintiff and the Class request the Court enter an injunction against Northwestern Memorial Hospital directing them to remove any code from their patient portal which may jeopardize the confidentiality and privacy of its patients' medical information.

96.     The Plaintiff requests on behalf of himself and the Class that a jury be seated in this matter and that the jury return a verdict in favor of the Plaintiff and Class in an amount of compensatory and punitive damages as will make them whole and properly punish the Defendants in this action.

97.     The Plaintiff and the Class are seeking an award of punitive damages exceeding $5,000,000 based upon the magnitude of the wrongdoing and the character of the conduct that led to these needless harms.

98.     The Plaintiff requests on behalf of himself and the Class an award of statutory damages under the SCA if liability is found under that statute.

99.     The Plaintiff requests on behalf of himself and the Class an award of attorney's fees and costs associated with the prosecution of this action.

100.    The Plaintiff requests on behalf of himself and the Class any other relief to which the Plaintiff and the Class may be entitled at law or equity.

101.    The Plaintiff requests entry of judgment upon any awards made by the Court or the jury in this matter.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff individually and for the Class, respectfully request that the Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B.    Declaring that Defendant's actions, as set out above, violate the PIPA, the Patient Rights Act, the Federal Wiretap Act, and the Stored Communications Act, and constitute invasion of privacy as defined by Illinois law;

C.    Awarding compensatory, punitive, and statutory damages in accordance with a jury's verdict after a trial;

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class as requested herein;

E.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

**JURY DEMAND**

Plaintiff, Michael Krackenberger, on behalf of himself and all others similarly situated, hereby respectfully demands a trial by jury on all such claims that may be so tried.

*/s/ Nick Wooten*
Lead Trial Counsel

17

*Respectfully submitted,*

**MICHAEL KRACKENBERGER**,
individually and on behalf of all others similarly situated,

*/s/ Nick Wooten*

Nick Wooten
Nick Wooten, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com
nick@texasjustice.com
Lead Trial Counsel

Senior Counsel for

DC LAW
1012 W ANDERSON LANE
AUSTIN, TEXAS 78757
PHONE 512-220-1800
FAX 512-220-1801
WWW.TEXASJUSTICE.COM

*Counsel for Plaintiff and the Class*